UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **GREG GERARD,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06 C 6163 |
| | ) | |
| **CONAGRA FOODS, INC.,** | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Greg Gerard, a warehouse worker for Defendant ConAgra Foods, was injured in an on-the-job forklift accident. He brought suit in state court against Yale Materials Handling Corp., a business name used by Nacco Materials Handling Group, Inc., the company he believed had manufactured the forklift. Nacco removed the case to federal court and filed a Third-Party Complaint alleging that Defendant's negligence contributed to Plaintiff's injuries. The parties devoted extensive effort in discovery to identify the manufacturer of the forklift involved in the accident. Those efforts were unsuccessful, however, and after the court granted summary judgment in favor of Nacco, Plaintiff filed an amended complaint against Defendant, alleging a claim for spoliation of evidence. Defendant now seeks summary judgment in its favor on that claim and, for the reasons that follow, the motion is granted.

## FACTUAL BACKGROUND[1]

On April 5, 2005 Plaintiff was walking through a loading area at Defendant's St. Charles warehouse when he was hit by a lift truck[2] driven by one of his coworkers. (Def's 56.1(a)(3) ¶¶ 11-

---

[1] The court notes that both parties have overlooked the Local Rule's requirement that each paragraph in a party's response to a statement of facts must include "a concise summary of the paragraph to which it is directed." N.D.ILL. L.R. 56.1(b)(3)(A). The court has discretion to overlook such infractions, *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995), and does so here, but reminds counsel of the need to follow the local rules.

[2] A lift truck, often referred to as a forklift, is "a small truck for lifting and transporting loads." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY at 673 (10th ed. 1997). The Material Handling
(continued...)

12.) Plaintiff testified that the truck hit him in the back, knocked him to the ground, and then drove over his right leg, causing fractures to some of his right foot's metatarsal bones. (Gerard Dep., Def's Ex. E, at 89-91.) Following corporate policy, Defendant conducted an investigation into the accident, which including investigating the scene and interviewing witnesses. (Def's 56.1(a)(3) ¶¶ 49-56.) The investigation also included an inspection of the lift truck by an outside maintenance company; the inspection found no problems with the lift truck's operation. (*Id.* ¶ 61.) In a report, Defendant concluded that the lift truck had no defects and that congestion and tight traffic patterns contributed to the accident. (Def's Ex. O.) An addendum to the report included several recommendations for preventing future accidents, several of which were in fact implemented. (Def's Ex. P; Def's 56.1(a)(3) ¶¶ 62-63.) The initial report is dated April 5, 2005, the date of the accident, and the addendum is dated April 6, 2005. (Def's Ex. P, O.) Defendant reported the accident to the Occupational Safety and Health Administration ("OSHA"), which did not investigate. (Def's 56.1(a)(3) ¶ 64.) On May 16, 2005, Plaintiff filed a workers' compensation claim against Defendant, eventually recovering an award of $38,011.34. (Def's Ex. F.)

Some time after the accident, the lawyer representing Plaintiff in the worker's compensation case asked to inspect the lift truck involved in the accident. (Feb. 17, 2006 letter from John O'Connor, Ex. 1 to Pl.'s Memorandum in Opposition to Motion for Summary Judgment [83].) The record does not reveal when the request was made, but it must have been prior to February 17, 2006 (about ten months after the accident) because that is the date of the letter responding to the request. (*Id.*) In that letter, a lawyer for Defendant explained that four similar lift trucks where being used in the warehouse at the time of the accident. (*Id.*) Of those trucks—designated WH1, WH2, WH3, and WH4—Defendant had

---

(...continued)
Equipment Distributors Association describes the lift truck as "one of the most important, yet overlooked, industrial innovations in modern times." FORKLIFT TRUCKS—THE BACKBONE OF THE INDUSTRY, http://www.themhedajournal.org/content/3q04/lifttrucks.php (last visited Apr. 28, 2010).

been able to rule out only WH3 from involvement in the accident. (*Id.*) Defendant offered Plaintiff's lawyer the chance to inspect WH1, a lift manufactured by Caterpillar, and WH2, manufactured by Yale, but explained that WH4, another Yale lift, had been returned to the lessor when that company went out of business. (*Id.*)

As reflected in other letters in the record, the lawyer representing Plaintiff in his products liability case did inspect the lift trucks on April 4, 2006. (May 15, 2006 letter from Richard Rosenblum; June 28, 2006 letter from G. Steven Murdock, Pl.'s Ex. 1.) Some weeks after that inspection, on May 15, 2006, Plaintiff's lawyers made a written request for identifying information about the lift truck designated WH4, the truck that was no longer in Defendant's possession. (*Id.*) In a letter dated June 28, 2006, Defendant's lawyer responded with information about lift truck WH4 furnished by Elizabeth Joy Klages, Defendant's Safety Intern, who acquired it from Defendant's maintenance department. (*Id.*; Def's 56.1(a)(3) ¶ 31.) Klages testified that she was not asked to identify the serial number for the lift truck involved in the accident until June 2006. (Def's 56.1(a)(3) ¶ 32.)

The May 15 letter from Plaintiff's lawyer also requested any documents completed by Rich Boulay, the lift truck driver involved in the accident. (Letters, Pl.'s Ex. 1.) Defendant's lawyer responded that Boulay should have completed a "Safety Sheet" on the day of the accident, but for some reason one could not be found. (*Id.*) In his deposition, Boulay recalled that he had filled out a pre-operation checklist the day of the accident and put it in the office of his supervisor, Jim Dinges. (Def's 56.1(a)(3) ¶¶ 14-15.) Dinges testified that this was standard procedure; after a lift operator gave him a checklist, he would review it and pass it on to the mechanical department. (*Id.* ¶¶ 16-18.) Dinges recalled seeing the checklist for the truck that Boulay drove on the day of the accident and he believed that a plant manager reviewed it after the accident before returning it to him. (*Id.* ¶¶ 21-23.) Klages testified that the checklist should have been retained because of the accident and the investigation. (Klages Dep., Def's Ex. I, at 64.) She also testified that an unsigned

3

and undated checklist was in the investigation file, but she did not know how it got there.  (*Id.* at 65.) That checklist is for lift truck WH4.  (Def's Ex. K.)  Plaintiff believes that the incomplete checklist in the file cannot be the checklist that Boulay filled out because Dinges testified that Boulay's checklist from the day of the accident was properly filled out.  (Dinges Dep., Def's Ex. H, at 58.)  The investigation report also states that Boulay filled out the checklist correctly at the start of his shift.  (Def's Ex. O.)

Boulay testified that he did not know the serial number of the truck he drove on the day of the accident but he believed it was identified internally as WH4.  (Def's 56.1(a)(3) ¶ 25.)  Plaintiff himself recalled asking Boulay which truck he had been driving and testified that to the best of Plaintiff's recollection, Boulay told him he had been driving WH4.  (Gerard Dep., Def's Ex. E, at 78.)  Presumably based on that representation, Plaintiff filed a state lawsuit on August 30, 2006 against Yale Materials Handling Corp., the entity he believed had manufactured the lift truck designated WH4.  The complaint sought recovery on products liability and negligence theories.  Nacco, which uses Yale Materials Handling Corp. as a business name, removed the case to federal court[3] and filed a Third-Party Complaint against ConAgra on the theory that ConAgra's negligence contributed to the accident.  (Def's 56.1(a)(3) ¶¶ 4-5.)

After extensive discovery, Plaintiff has conceded that he is unable to identify the make, model, or serial number of the lift truck involved in the accident.  (Pl's Mot. for Leave to File Amended Complaint [55] ¶ 5.)  The court granted Nacco's unopposed motion for summary judgment and also granted Plaintiff's request for leave to file an amended complaint against ConAgra, asserting a claim for spoliation of evidence.  (Order of July 20, 2009 [61].)  ConAgra now moves for summary judgment on the spoliation claim.

---

[3] The parties to the original action are diverse in citizenship; Plaintiff is a citizen and resident of Illinois and Nacco is a corporation organized under the laws of Delaware and having its principal place of business in Oregon.  (Notice of Removal [1], at 2.)  Plaintiff seeks recovery in excess of $75,000.  (*Id.*)  And Plaintiff is diverse in citizenship from his employer, ConAgra Foods, Inc., which is organized under the laws of Nebraska and has its principal place of business there.  (Def's 56.1(a)(3) ¶ 5.)

**ANALYSIS**

Summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Once the moving party has set forth the basis for summary judgment, the burden shifts to the nonmoving party, who must go beyond mere allegations and "set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2). "On a motion for summary judgment, the district court must construe all facts and draw all reasonable inferences in favor of the non-movant." *Srail v. Village of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009).

Illinois law does not recognize a tort of intentional spoliation of evidence, and it treats negligent spoliation as a type of negligence rather than an independent tort. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 509-10 (7th Cir. 2007); *Boyd v. Travelers Insurance Co.*, 166 Ill.2d 188, 192-93, 652 N.E.2d 267, 269-70 (1995). To prevail in a negligence claim for spoliation, Plaintiff must establish a duty to preserve evidence, a breach of that duty, causation, and damages. *Boyd*, 166 Ill.2d at 194-95, 652 N.E.2d at 270-71. The Illinois Supreme Court has described the duty inquiry as governed by a two-prong test. The "relationship" prong of the test requires the court to "determine whether such a duty arises by agreement, contract, statute, special circumstance, or voluntary undertaking." *Dardeen v. Kuehling*, 213 Ill.2d 329, 336, 821 N.E.2d 227, 231 (2004). If so, the "foreseeability" prong, asks whether the duty extended to the evidence at issue, that is, "whether a reasonable person should have foreseen that the evidence was material to a potential civil action." *Id.*

Plaintiff argues that Defendant assumed a duty to preserve evidence by voluntarily segregating the lift truck and by carrying out its own policy requiring investigation of the accident. (Pl's Br., at 11-13.) A party's voluntary undertaking to preserve evidence for its own benefit does impose a "duty to continue to exercise due care to preserve the evidence for the benefit of any

5

other potential litigants." *Jones v. O'Brien Tire & Battery Service Center, Inc.*, 374 Ill. App. 3d 918, 927, 871 N.E.2d 98, 107-08 (5th Dist. 2007). In *Jones*, a duty arose when the defendant, for its own benefit, instructed its insured not to destroy evidence from an accident. *Id.*; *see also Stoner v. Wal-Mart Stores, Inc.*, No. 06-4053, 2008 WL 3876077, at *4 (C.D. Ill. Aug. 18, 2008) (duty to preserve evidence where store employees knew of a video tape containing footage of plaintiff's trip-and-fall and employees took steps to preserve it). The rule of *Jones* is in accord with the Illinois Supreme Court's holding in *Boyd* that a duty to preserve evidence arose where employees of the defendant took a heater belonging to the plaintiff to investigate the plaintiff's workers' compensation claim, knowing that the evidence was relevant to future litigation. *Boyd*, 166 Ill.2d at 195, 652 N.E.2d at 271. Thus, by investigating the accident for its own benefit, Defendant assumed a duty to preserve evidence. Plaintiff has satisfied the relationship prong of the duty inquiry.

The foreseeability prong of the inquiry asks whether the materiality of the evidence to a potential civil action was foreseeable to a reasonable person. The evidence that Plaintiff argues should have been preserved is the lift truck itself and the pre-operation checklist.[4] (Pl's Br., at 11.) In light of the severity of his injury and the extensive investigation that Defendant undertook, Plaintiff urges, a reasonable person would have foreseen that the lift truck and the checklist were material to a potential civil action. (*Id.* at 12-13.) In arguing against foreseeability, Defendant notes the distinction between Plaintiff's workers' compensation claim and his civil suit. (Def's Br., at 8-9; Def's Reply Br., at 9-11.) Indeed, in a spoliation case growing out of an unsuccessful claim under the Workers' Compensation Act, the Illinois Appellate Court concluded that because the Act did not require the defendant employer to preserve the records in question, "a reasonable person in defendants' position would not have foreseen that the records would be material to a potential civil suit." *Chidichimo v. University of Chicago Press*, 289 Ill. App. 3d 6, 11, 681 N.E.2d 107, 128 (1st

---

[4] Plaintiff also mentions photographs of the lift truck, post-accident inspection documents and "other documentary evidence identifying the forklift involved in the occurrence," but he does not point to evidence that any such documents were ever created. (Pl's Br., at 2, 12-13.) Evidence that does not exist cannot be preserved.

Dist. 1997). *Chidichimo* is distinguishable, though, because, in that case, it was the worker's compensation claim that plaintiff relied on to establish a relationship that imposed a duty to preserve evidence; here, it is the Defendant's voluntary undertaking of its own investigation that created the duty to preserve.

The court finds that a reasonable person should have foreseen that the pre-operation checklist was material to a potential civil action. Dinges recalled that a plant manager reviewed the checklist after the accident, (Def's 56.1(a)(3) ¶ 22), and the follow-up report on the accident specifically mentions that the lift driver had filled out the checklist correctly. (Def's Ex. O.) Klages, the Safety Intern, herself acknowledged that, based on Defendant's practice at the time, the report should have been preserved. (Klages Dep., Def's Ex. I, at 64.) Because of the strong evidence that Defendant believed the checklist was necessary to its own review and investigation of the accident, a reasonable person would have foreseen its importance to a potential civil action by Plaintiff. *Jones*, 374 Ill. App. 3d at 928, 871 N.E.2d at 108 (finding "foreseeability" prong satisfied in part by party's recognition of importance of preserving evidence for its own benefit).

The question whether the importance of the lift truck itself was foreseeable yields a different answer, however. Defendant obviously recognized that the truck was important or it would not have arranged for inspection of the lift truck by an outside maintenance company. (Def's 56.1(a)(3) ¶ 61.) Significantly, though, the inspector determined that nothing was wrong with the truck. (*Id.*) Thus, Defendant had no reason to think that preserving the truck itself was necessary. Because there is no evidence that Defendant believed anything was wrong with the lift truck, this case is quite different from the more common spoliation case where an obviously broken item is not preserved. *See, e.g., Boyd*, 166 Ill.2d at 188, 652 N.E.2d at 267 (broken heater); *Jones*, 374 Ill. App. 3d at 918, 871 N.E.2d at 98 (broken wheel assembly). Significantly, Plaintiff himself did not put Defendant on notice that he believed anything was wrong with the lift truck until several

months after the accident.[5] In a very similar situation, in which a worker was injured in an on-the-job forklift accident, a court held for the plaintiff on the foreseeability prong because, only six days after the accident, the plaintiffs' lawyer informed defendants of the possibility of a lawsuit. Counsel referred both to a potential workers' compensation claim and to a personal injury claim, and instructed the employer not to modify the forklift without giving counsel a chance to inspect it. *Smith v. Shipping Utilities, Inc.*, No. Civ. 05-500, 2005 WL 3133494, at *2-*3 (S.D. Ill. Nov. 23, 2005). No such notice was furnished here. The court concludes that Plaintiff has not satisfied the foreseeability prong with respect to the lift truck itself.

Besides duty and breach, Plaintiff must also show causation; that is, he must present "sufficient facts to support a claim that the loss or destruction of the evidence *caused the plaintiff to be unable to prove* an underlying lawsuit." *Boyd*, 166 Ill.2d at 196, 652 N.E.2d at 271 (emphasis in original). Considering this element, the *Boyd* court reasoned that requiring a plaintiff to prove that he would have prevailed in the underlying action but for the loss of the evidence would be too great a burden. *Id.* at n.2. Instead, a plaintiff need show only that "but for the defendant's loss or destruction of the evidence, the plaintiff had a reasonable probability of succeeding in the underlying suit." *Id.* Plaintiff has not made even that more limited showing; as far as the court can determine, the only evidence relevant to the merits of Plaintiff's underlying suit against the truck manufacturer is testimony that an inspector found nothing wrong with the truck on the day of the accident. In any event, as discussed below, the court concludes that Defendant is entitled to summary judgment even if Plaintiff could show a reasonable probability of success on the underlying claim.

Assuming Plaintiff can make such a showing, his spoliation claim nevertheless fails because he cannot show that, had the pre-operation checklist been preserved, he would have been able to

---

[5] As discussed above, the court has been unable to determine when Plaintiff's request to examine the lift trucks was made, but Defendant's response came about ten months after the accident, and nothing in the record suggests a long delay in furnishing that response.

identify the lift truck involved in the accident. There is no dispute that the missing checklist would have contained the internal designation of the lift truck that Boulay drove on the day of the accident. (Def's 56.1(a)(3) ¶ 19.) Significantly, though, Plaintiff asserts that even with that internal designation, he would not have been able to determine which lift truck was involved. (Pl's Br., at 14-15.) Assuming that Boulay was correct that he was driving truck WH4, Plaintiff explains that service repair invoices that Defendant produced do not conclusively show which truck that was. Invoices for dates before and after the accident (April 4, 2005 and April 30, 2005) show that the designation referred to a Yale truck with serial number ending in 2578V, but an invoice from just one month later assigns the internal designation WH4 to a Yale truck with a serial number ending in 4336V. (Ex. A to Def's Ex. L, at 17-18, 22.) Moreover, Plaintiff points to invoices from two consecutive days in 2004 showing different lift trucks designated as WH4. (*Id.* at 9-10.) Plaintiff asserts that these invoices show that Defendant failed to preserve evidence that would allow him to identify the lift truck. (Pl's Br., at 14-15.) The court sees it differently: the invoices Plaintiff identifies show that any evidence that Defendant did in fact preserve, or could have preserved, would not have been helpful to Plaintiff. Nothing produced in discovery suggests that evidence that would allow Plaintiff to identify the lift truck ever actually existed. On the contrary, Klages testified that she was not aware of any internal records from the time of the accident that would identify which forklift had which internal designation. (Klages Dep., Def's Ex. I, at 132.)

The duty to preserve evidence is not a duty to *create* evidence. When a duty is imposed by a voluntary undertaking, the extent of the duty goes only as far as the extent of the undertaking. *Frye v. Medicare-Glaser Corp.*, 153 Ill.2d 26, 32-33, 605 N.E.2d 557, 560 (1992) (pharmacy's warning that prescription might cause drowsiness did not create duty to warn of other side effects). In this case, the investigation that Defendant undertook did not extend to documenting which lift truck was involved in the accident. That shortcoming may mean that, in hindsight, the investigation into the accident was imperfect, but it does not mean that Defendant breached a duty. Although

some investigation was surely required by OSHA or other regulators and by good corporate practice, a holding by this court that undertaking any investigation requires some specific and more extensive inquiry might have the undesirable effect of discouraging investigations altogether. *LM ex rel. KM v. United States*, 344 F.3d 695, 702 (7th Cir. 2003); *Frye*, 178 Ill.2d at 33, 605 N.E.2d at 560. The court concludes that Plaintiff cannot show that a breach of the duty to preserve evidence by Defendant caused him to be unable to win the underlying lawsuit, and therefore grants summary judgment in favor of Defendant.

## **CONCLUSION**

Defendant's Motion for Summary Judgment [79] is granted.

ENTER:

Dated: April 28, 2010

_____
REBECCA R. PALLMEYER
United States District Judge